# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Harold Linares,                          :
                                         :
                    Plaintiff,           :
        v.                               :        Civil Action No. 04-0247 (GK)
                                         :
Curtis Jones, Jr. *et al.*,              :
                                         :
                                         :
                    Defendants.          :

## MEMORANDUM OPINION

This action, brought under 42 U.S.C. § 1983 and common law, is before the Court on

Defendants' motion to partially dismiss Plaintiff's second amended complaint or for partial summary

judgment.    Based upon the parties' submissions and the entire record, the Court will grant

Defendants' motion in part and deny it in part.

## I.    BACKGROUND

This action arises from Plaintiff's encounter on January 3, 2002, with three officers of the

Metropolitan Police Department ("MPD").   Plaintiff alleges that while driving from a nightclub in

the District of Columbia, gun shots were exchanged between passengers in his car and another car.

2nd Am. Compl. ¶ 17.  While "retreat[ing] from the shooting . . .  Plaintiff's vehicle collided with

a white Mitsubishi automobile.  Plaintiff's airbags deployed, and he lost consciousness." Id. ¶ 18.

Plaintiff's car was soon surrounded by police officers, one of whom "punched out the window and

struck Plaintiff in his face [bringing him] back to consciousness."  Id.   The officers then pulled

Plaintiff from the car through the driver's side window, and one officer proceeded to punch him

"repeatedly in the face, and another [] officer punched [him] in the stomach," causing Plaintiff to

"double[] over" presumably in pain. Id. ¶ 19.   The officers continued to kick and punch Plaintiff

while "yelling racially charged insults at him." Id.  One officer slammed Plaintiff to the ground face down, and "stepp[ed] hard on the back of Plaintiff's head.  The officers pushed Plaintiff into the gravel, causing abrasions on his face and arms." Id. While on the ground, Plaintiff was "struck in the face with a blunt object," which fractured his nose and caused him again to lose consciousness. Id.  Plaintiff "suffered head trauma, developed bruises in both of his eye sockets and [suffered] pain in his lower back." Id.

Plaintiff alleges that during his transport to the police station, officers refused his request to be taken to a hospital.  After sitting at the police station for "four to five hours," Plaintiff was taken to D.C. General Hospital.  Id. ¶ 21.  Despite his complaints to police officers, Plaintiff sat at D.C. General Hospital for 12 hours without seeing a doctor and was then transported back to the police station where he sat for "another four to five hours" until his transport to the Central Detention Facility ("CDF").  Id. ¶ 22.  After "another four to five hours" at CDF, Plaintiff was examined by a nurse who "gave him some over-the-counter pain medication, and told him that there was nothing wrong with him."  Id.  ¶ 23.  When Plaintiff finally saw a doctor, he was told that he "had a broken nose and required an X-ray," but a month passed without the taking of an X-ray or further medical treatment.  Id. ¶ 24.  When Plaintiff complained, he was given "over-the-counter pain medications that were ineffective in treating his severe pain."  An X-ray was never taken.  Id.

Plaintiff names as defendants the District of Columbia,  former Mayor Anthony Williams, former Police Chief Charles H. Ramsey, and MPD officers Curtis Jones, Curtis Reed and Stanley Rembish.  He sues the police officers in their individual and official capacities under 42 U.S.C. § 1983 for allegedly violating his rights under the Fourth and Fifth Amendments to the United States Constitution, and under common law.  See 2nd Am. Compl., Counts 1-III, V.  He sues the District

of Columbia for Fifth Amendment violations and under common law ( Counts IV, VI-VII) and

Ramsey and Williams in their individual capacities under common law (Counts VIII-IX).

## II.     STANDARD OF REVIEW

Because the Court will rely on matters beyond the pleadings, it will employ the standard for

summary judgment, except as later discussed.  See Fed. R. Civ. P. 12(b)(6) (conversion clause).

Summary judgment is warranted if  the movant shows that there are no genuine issues of material

fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp.

v. Catrett, 477 U.S. 317 (1986).  As a general rule, "[i]n deciding whether there is a genuine issue

of fact before it, the court must assume the truth of all statements proffered by the party opposing

summary judgment."  Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999).  All reasonable

inferences that may be drawn from the facts must be drawn in favor of the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-movant, however, "may not rest

upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing

that there is a genuine issue for trial." Id., 477 U.S. at 248.  Thus, when facts are not controverted

in opposition to a summary judgment motion, the Court "may assume that facts identified by the

moving party in its statement of material facts are admitted."  Local Civil Rule 7(h).

## III.    ANALYSIS

### A.     Plaintiff's Federal Claims

#### 1.     Plaintiff Failed to Exhaust His Administrative Remedies with Respect to Count IV

Defendants seek dismissal of Counts IV and V, arising from the alleged unconstitutional

denial of medical treatment, on the ground that Plaintiff failed to exhaust his administrative remedies

by appealing his grievance to the Director (the final step of the Department of Corrections Inmate Grievance Procedure ("IGP")). See Def.'s Ex. 1 at 6.[1]  Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The United States Supreme Court has determined that "the PLRA's exhaustion requirement applies  to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." Woodford v. Ngo, 548 U.S. ___, 126 S.Ct. 2378, 2386 (2006).

Plaintiff does not dispute that he did not appeal his grievance to the Director.  Rather, he asserts that he "substantially complied with the inmate grievance procedures that were available to him." Pl.'s Statement of Disputed Material Facts ¶ 3.  Specifically, Plaintiff states that he "filled out a grievance form stating that I had not received medical treatment for injuries I suffered during my arrest. . . . After I did not receive a response to that form, I filled out a second, 'remedy appeal' form. . . .  In the entire time I was in District of Columbia Department of Corrections custody[,] I never received any response to any of my grievance forms."  Pl.'s Ex. 1 (Declaration of Harold Linares ¶¶ 4, 6, 8).

---

[1]  If an inmate cannot informally resolve a problem, the IGP requires him to file (1) a formal complaint (IGP Form 1) with the Inmate Administrator within 15 calendar days of the incident, (2) an appeal with the Associate Director (IGP Form 3) within five days of the Administrator's response, and (3) an appeal with the DOC Director (IGP Form 4) within five days of the Associate Director's response.

Plaintiff does not state when he pursued his grievance, and he has not provided copies of the grievance forms or requested discovery as a possible means of obtaining said copies. Thus, there is no proof in the record that his grievance was in compliance with the IGP's time constraints. The IGP provides for an appeal first to the Associate Director for Institutions and finally to the Director. Def.'s Ex. 1 at 6. "Whenever a grievance does not receive a response within the prescribed response time . . . the inmate may proceed to the next step in the grievance procedure." Id. at 5. Plaintiff has not proffered any evidence that contradicts Defendants' evidence indicating that he did not take the final step of appealing to the Director, see Affidavit of Sallie Thomas (Ex. 2). This step may not be reasonably inferred from Plaintiff's declaration which, at best, supports his completion of the first level of appeal to the Associate Director.[2]

In addition, Plaintiff cannot reasonably argue that it was his transfer from the District of Columbia's custody to federal custody in March 2003 which hindered his ability to exhaust his administrative remedies because he was in local custody for 14 months. See Def.'s Reply at 4 (calculating Plaintiff's time spent in local custody); Kaba v. Stepp, 458 F.3d 678, 685 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited."). Moreover, Plaintiff does not suggest in his declaration that he was hindered in any other way from appealing to the Director. Cf. Kaba, 458 F.3d at 682 (well-documented "series of events–including the withholding of grievance forms, direct threats, and an inmate assault" presented genuine issue of material fact regarding the availability of administrative remedies to prisoner).

---

[2]   Because Plaintiff has not stated that he even attempted the final step of appealing to the Director, engaging in discovery "to determine the extent to which the IGP was otherwise unavailable to inmates," Pl.'s Statement of Disputed Material Facts ¶ 2, would be a futile exercise.

In the absence of any evidence creating a genuine issue of material fact with regard to Plaintiff's failure to exhaust administrative remedies as to his medical treatment while confined at the District of Columbia Jail, the Court concludes that Defendants are entitled to judgment as a matter of law on Count IV of the second amended complaint and the Defendant's Motion for Summary Judgment is **granted** as to Count IV.

### 2. The Exhaustion Requirement Is Inapplicable to Count V

Defendants also advance Plaintiff's failure to exhaust as a basis for dismissing Count V. This count appears to be based on the arresting officers' alleged indifference to Plaintiff's medical needs presumably while he was in the custody of the MPD, not the DOC. Although neither party has addressed the legal significance of this factual distinction, it is very doubtful whether the PLRA's exhaustion requirement applies to the circumstances surrounding Plaintiff's arrest and initial police custody. See Woodford, 548 U.S. ___, 126 S.Ct. 2387 ("The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons."). Therefore, Defendants' Motion for Summary Judgment as to Count V is **denied without prejudice**.

### B. Plaintiff's Common Law Claims

### 1. The Statute of Limitations Is Tolled

Defendants assert that Plaintiff's claims of Assault and Battery (Count II), Intentional Infliction of Emotional Distress (Count III) and Vicarious Liability (VI) are barred by the District of Columbia's one-year statute of limitations. Plaintiff rightly counters that his incarceration since the arrest tolls the running of the statute of limitations. See D.C. Code § 12-302(a)(3) (limitations period is tolled if a claimant is disabled by, inter alia, imprisonment). Summary judgment on this basis therefore is **denied**.

## 2.    Plaintiff Failed to Comply with D.C. Code § 12-309

Defendants assert that Plaintiff's common law claims against the District of Columbia predicated on the arresting officers' actions (Counts VI and VII) are barred because Plaintiff failed to satisfy the mandatory notice requirement for maintaining such claims against the District.  Under the governing statute:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.  A report in writing by the Metropolitan Police Department, in the regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309.  Because this provision "represents a waiver of sovereign immunity," Tibbs v. Williams, 263 F. Supp.2d 39, 43 (D.D.C. 2003), compliance is mandatory and "is to be strictly construed" against the claimant.  Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981).  Thus, the "notice is fatally defective if one or more of the statutory elements is lacking," Boone v. District of Columbia, 294 F. Supp. 1156, 1157 (D.D.C. 1968), and no right of action accrues.  Gwinn, 434 A.2d at 137; accord Doe by Fein v. District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996).

"The purposes of the statute are: '(1) to allow the District to investigate potential claims so that evidence may be gathered while still available, for example before the relevant sidewalk is paved over or the meter cover fixed, (2) to enable the District to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones.'"  Brown v. District of Columbia, 853 A.2d 733, 737 (D.C. 2004) (quoting Hardy

7

v. District of Columbia, 616 A.2d 338, 340 (D.C. 1992)).  The notice requirement thus serves to "protect the District of Columbia against unreasonable claims and to assist it in the defense of the public interest where claims are made within the . . . statute of limitations but so long after the event that it is impossible for the District of Columbia to obtain evidence for use in the litigation which may result."  Tibbs, 263 F. Supp.2d at 43.

Plaintiff's purported claim notice is a four-page, undated letter addressed to no particular office or person.  Pl.'s Opp., Ex. 3; Def.'s Ex. 3 ("Letter").  The letter is fatally defective because in the absence of proof of when the letter was written, delivered to or received by the Mayor, Plaintiff cannot establish that he timely complied with the statute by providing notice within six months of the injury.[3]  See, e.g., Toomey v. District of Columbia, 315 A.2d 565, 566 -67 (D.C. 1974) (finding rebuttable presumption of addressee's receipt of notice "[u]pon proof of the mailing of a letter, properly addressed and stamped") (internal citations and quotation marks omitted).

Even if, as Defendants seem to concede (Def.'s Mem. at 19), timeliness may be inferred from the letter's content, the letter is inadequate because it does not contain all of the requisite statutory elements.  Plaintiff states that he is "writing in hopes of attaining [sic] information or publication on a particular problem that I am enduring at this present time."  Letter at 1.  He explains that since "Wed January 2nd of this New Year," he has been "incarcerated in the DC detention center awaiting trial for the federal system."  Id.  Plaintiff states that he suffered injuries from being "physically abused by the officers whom [sic] arrested me, officers from the 7th District . . . famous for this behaviour [sic]."  Id.  He therefore satisfies the "cause and circumstances" requirements.  The letter,

_____

[3]  Unlike the statute of limitations, the "statutory period of notice" is not tolled during one's disability.  Gwinn, 434 A.2d at 1378-79.

however, does not include an approximate time of the encounter, and it is too vague about the location to satisfy the "place" requirement.

"The statute's 'approximate time' requirement means a claimant must give the District 'an approximate estimate of the time of the accident,'" <u>Washington v. District of Columbia</u>, 429 A.2d 1362, 1365, n.7 (D.C.1981) (citations omitted), and "[o]mitting the place of an alleged injury is fatal under § 12-309." <u>Kirkland v. District of Columbia</u>, 70 F.3d 629, 632 (D.C. Cir. 1995). The statute does not require that the notice provide an exact location of the injury, <u>see</u> <u>Hardy v. District of Columbia</u>, 616 A.2d 338, 341-43 (D.C. 1992), but the notice must "describe the situs of the injury in such a manner as to reasonably enable the investigating agency to find it." <u>Hurd v. District of Columbia</u>, 106 A.2d 702, 704 (D.C. 1954). It is unclear from the letter whether Plaintiff's reference to "South East Washington D.C." (Letter at 3) is to the location of the "go-go club" or where the police are alleged to have beaten him following the car chase. In any event, Southeast D.C. presents "so many possibilities or such a large search area that the District could not [have reasonably investigated Plaintiff's] claim." <u>Hardy</u>, 616 A.2d at 342.

In the absence of any evidence presenting a genuine issue of material fact with respect to Plaintiff's noncompliance with § 12-309, the Court concludes that the District of Columbia is entitled to judgment as a matter of law on Counts VI and VII of the second amended complaint, and that Defendant's motion must be **granted** as to those Counts.

### 3.    Plaintiff States a Common Law Claim Against Defendant Ramsey

Defendants assert that Plaintiff has failed to state a claim of negligent supervision against former Chief Ramsey (Count VIII) and a claim of negligence against former Mayor Williams (Counts IX), both of whom are being sued in their individual capacities. In ruling on this part of the

motion, which is based solely on the complaint's allegations, the Court may dismiss these counts under Fed. R. Civ. P. 12(b)(6) only if appears, assuming the alleged facts to be true and drawing all inferences in Plaintiff's favor, that Plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, ___U.S.___, ___ S.Ct. ___, WL 1461066, *10 -11  (May 21, 2007);  Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997), cert. denied, 531 U.S. 1147 (2001); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp, ___S.Ct.___, WL 1461066, *8 (citations and internal quotation marks omitted; bracket in original).  Thus, the Court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal, 16 F.3d at 1276.

Defendants assert that Plaintiff cannot maintain his negligence claims against Ramsey or Williams because neither Defendant was the officers' employer.  Plaintiff counters that Defendants have wrongly characterized his claims against Williams and Ramsey as based on the principle of respondeat superior.  The Court agrees that Defendants' premise is faulty.  "The District of Columbia recognizes the tort of negligent supervision" as subjecting to liability "[a] person conducting an activity through servants or other agents . . . for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity; or in permitting, or failing to prevent, negligent or other tortious conduct by persons . . . upon premises or with instrumentalities under his control."

10

Tarpeh-Doh v. United States, 28 F.3d 120, 123 (D.C. Cir. 1994) (quoting Restatement (Second) of Agency § 213 (1957)) (other citations omitted).

Contrary to Defendants' position, "supervisory officers [are] subject to suit, though not always ultimately liable on the merits for the particular transgressions involved." Carter v. Carlson, 447 2d 358, 365, n.12 (D.C. Cir. 1971), rev'd on other grounds sub nom. District of Columbia v. Carter, 409 U.S. 418 (1973) (citing cases); see Marusa v. District of Columbia, 484 F.2d 828, 831 (D.C. Cir. 1973) (cause of action stated against the police chief and the District of Columbia for negligent hiring and supervision).

Plaintiff alleges that then-Chief Ramsey "failed to adequately oversee the training and supervision" of the arresting officers "and implemented policies and procedures that created unreasonable risks to the public of police misconduct. This negligence is a direct and proximate cause of the injuries suffered by the Plaintiff." 2nd Am. Compl. ¶ 56. Plaintiff has provided adequate notice of a claim of negligent supervision against Defendant Ramsey. Thus, the motion to dismiss Count VIII of the second amended complaint will be **denied**.

### 4.    Plaintiff Fails to State a Negligence Claim Against Defendant Williams

Plaintiff alleges that then-Mayor Williams "created policies and procedures that created an unreasonable risk that the public would suffer from police misconduct [and that] these policies and procedures directly and proximately caused Plaintiff's injuries." Id. ¶ 58. Under District of Columbia law, "[t]he elements of a common law action for negligence are (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty." Powell By and Through Ricks v. Dist. of Columbia, 634 A.2d 403, 406 (D.C.1993) (citation omitted); accord Jones v. Hartford Life and Acc.

Ins. Co., 443 F.Supp. 2d 3, 5 (D.D.C. 2006).  Plaintiff has not pleaded any of the foregoing elements, and a claim of negligence against Williams in his individual capacity may not be reasonably inferred from Plaintiff's conclusory allegations based on generalized mayoral policy.  See Turner v. District of Columbia,  532 A.2d 662, 675 (D.C. 1987) (affirming dismissal of complaint against the Mayor and the Chief of Child Protective Services that "alleged no facts suggesting personal involvement . . . by either of them [and where] as public officials they cannot be held liable in tort for the acts of their subordinates under a respondeat superior theory unless they directed or countenanced the tortious acts.") (citation omitted); Eskridge v. Jackson,  401 A.2d 986, 989, n.7 (D.C. 1979) ("pleader seeking to state a cause of action against an officer personally must allege that he transcended his authority and was acting beyond the scope of official duty.") (citation omitted).  In the absence of "any factual indication that [then-Mayor Williams] was connected in any way with the event[s] giving rise to the lawsuit," Eskridge, 401 A.2d at 989, the motion to dismiss Count IX of the second amended complaint will be **granted**.

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion is granted as to Counts IV, VI, VII and IX and is denied in all other respects.  Counts I (Section 1983), II (Section 1983), III (Section 1983), V (Section 1983), and VIII (negligent supervision) remain.  A separate Order accompanies this Memorandum Opinion.

June 4, 2007

/s/_____
GLADYS KESSLER
U.S. District Judge