`                        UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA

**Harold Linares,**                :
                                   :
        **Plaintiff,**       :
                                   :
    v.                           :   **Civil Action No. 04-0247 (GK)**
                                   :
**Curtis Jones, Jr.** *et al.***,**    :
                                   :
                                   :
        **Defendants.**       :

**MEMORANDUM OPINION**

This matter, arising under 42 U.S.C. § 1983 and common law, is before the Court on the motion for partial summary judgment as to Defendants Curtis Jones, Stanley Rembish, Charles Ramsey and William Farr. Upon consideration of the motion, Plaintiff's opposition, and the relevant parts of the record, the Court will grant Defendants' motion in part and deny it in part.

**I.   BACKGROUND**

This action arises from Plaintiff's encounter on January 3, 2002, with officers of the Metropolitan Police Department ("MPD"). Plaintiff alleges that while entering his car near Nikki's Supper Club located at 1306 Good Hope Road in Washington, D.C., with two companions, he heard gun shots fired from outside and inside the car. 3rd Am. Compl. ¶ 14. MPD officers "pursued Plaintiff's automobile on Good Hope Road." Id. ¶ 15. Plaintiff's vehicle collided with a white Mitsubishi automobile, his airbags deployed and Plaintiff lost consciousness. Id. Plaintiff's car was "quickly surrounded by [MPD] officers, including [Defendants] [Curtis] Reed, Jones and Rembish." Id. One of the officers "broke the car window and struck Plaintiff in his face [bringing him] back to consciousness." Id. The officers then pulled Plaintiff from the car through the driver's side window, and one officer proceeded to punch him "repeatedly in the face, and another [] officer

punched [him] in the stomach," causing Plaintiff to "double[] over" presumably in pain. Id. ¶ 16. The officers continued to kick and punch Plaintiff while "yelling racially charged insults at him." Id. One officer slammed Plaintiff to the ground face down, and "stepp[ed] hard on the back of Plaintiff's head. The officers pushed Plaintiff into the gravel, causing abrasions on his face and arms." Id. While on the ground, Plaintiff was "struck in the face with a blunt object, severely damaging his nose" and causing him to lose consciousness again. Id. Plaintiff "suffered head trauma, developed bruises in both of his eye sockets and [suffered] pain in his lower back." Id. "When Plaintiff regained consciousness, the officers brought him to the side of the road and left him sitting on the curb. Eventually, they put [Plaintiff] in the back of a police car and took him to the police station." Id. ¶ 17.

Plaintiff alleges that during his transport to the Seventh District Headquarters, officers refused his request to be taken to a hospital. Id. After complaining "about the abuse and request[ing] again to be taken to a hospital, id., Plaintiff "was finally taken" to D.C. General Hospital. Id. ¶ 18. Despite his complaints to police officers, Plaintiff allegedly did not see a doctor but instead received "over-the-counter pain medications" from the officers. Id. Plaintiff was transported back to the police station and then to the Central Detention Facility ("CDF"), allegedly without ever seeing a doctor. Id. ¶ 19.

The Court previously awarded partial summary judgment to Defendants on certain counts of Plaintiff's Second Amended Complaint. The surviving claims, set forth in Plaintiff's Third Amended Complaint ("Compl.") [Dkt. No. 67], are based on excessive use of force, the denial of medical care and negligent supervision. See Order (June 4, 2007).

## II. LEGAL STANDARD

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). As a general rule, "[i]n deciding whether there is a genuine issue of fact before it, the court must assume the truth of all statements proffered by the party opposing summary judgment." Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999). All reasonable inferences that may be drawn from the facts must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-movant, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id., 477 U.S. at 248. Thus, when facts are not controverted in opposition to a summary judgment motion, the Court "may assume that facts identified by the moving party in its statement of material facts are admitted." Local Civil Rule 7(h). When facts are disputed, however, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

## III. ANALYSIS

Defendants contend that they are entitled to summary judgment on certain claims of the complaint, namely, (1) the constitutional and common law claims against Stanley Rembish for unreasonable use of force, assault and battery, intentional infliction of emotional distress, and the deprivation of medical care (Counts I-IV), (2) the constitutional claim against Rembish, Jones and Reed for the alleged deprivation of medical care (Count IV) and (3) the negligent supervision and

training claim against Ramsey, Farr and Jones (Counts V and VI).[1]  Def.'s Mot. at 1.  In addition, Defendants contend that all of the movants are shielded by qualified immunity, id., but this defense is applicable only to Rembish as he is the only movant sued under 42 U.S.C. § 1983 for constitutional violations.[2]  As both the Supreme Court and our Court of Appeals have instructed, this Court must first determine whether Rembish is protected by qualified immunity.  Siegert v. Gilley, 500 U.S. 226, 232 (1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)); Kalka v. Hawk, 215 F.3d 90, 94 (D.C. Cir. 2000); McSurely v. McClellan, 697 F.2d 309, 318, n. 17 (D.C. Cir. 1982).

**A. Qualified Immunity**

Courts have long held that qualified immunity protects a government official from suits for damages in the performance of discretionary duties unless the official "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . '"  Harlow, 457 U.S. at 813 (quoting Wood v. Strickland, 420 U.S. 308, 322(1975)); accord Farmer v. Moritsugu 163 F.3d 610, 613 (D.C. Cir. 1998); Brogsdale v. Barry, 926 F.2d 1184, 1189 (D.C. Cir.1991).  An official enjoys protection from

---

[1]  Plaintiff also sues Defendants Jones and Reed for constitutional violations (Count I) and under common law (Counts II, III).  None of these claims is currently before the Court for resolution.

[2]  Defendants' disjointed brief is not easy to follow.  It is not until page 22 of the Memorandum of Points and Authorities that Defendants argue awkwardly that Ramsey enjoys absolute immunity under the District's common law.  Because the immunity defense is waivable and, as determined below, Ramsey is entitled to summary judgment on Defendants' alternative ground for relief, the Court has "no need to address [Ramsey's] . . . assertion[] of immunity . . . ." Briggs v. Washington Metropolitan Area Transit Authority, 481 F.3d 899, 848 (D.C. Cir. 2007) (citing U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc., 393 F.3d 1321, 1327  (D.C. Cir. 2005)) as authority for "refraining from addressing additional arguments after making a dispositve conclusion.").

liability "where [his] conduct is objectively reasonable in light of existing law." Farmer, 163 F.3d at 613 (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)). On the other hand, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." Id. (quoting Harlow, 457 U.S. at 819).

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818-19. "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Wilson, 526 U.S. at 614-15 (quoting Anderson, 483 U.S. at 640). Whether the law was "clearly established" depends largely "upon the level of generality at which the relevant legal rule is to be identified." Id. (internal citations omitted). This inquiry is an objective one. Id. at 615.

In Count I of the complaint, Plaintiff alleges that during his arrest Rembish, along with Jones and Reed, beat him repeatedly to the point of unconsciousness, in violation of the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures, which necessarily embodies protection against excessive force. See Graham v. Connor, 490 U.S. 386

5

(1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."); Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). In Count IV of the complaint, Plaintiff alleges that Rembish, along with Jones and Reed, was deliberately indifferent to his serious medical needs while in custody, in violation of the Fifth Amendment. It is long established that "[t]he Due Process Clause . . . does require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." See Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

Thus, Plaintiff has alleged the deprivation of actual constitutional rights which, as shown by the foregoing precedent, were clearly established long before the events giving rise to this action and about which a reasonable officer performing his duties in 2002 should have known. The Court therefore concludes that qualified immunity does not shield Rembish from liability under § 1983.

**B. Plaintiff's Constitutional and Common Law Claims Against Officer Rembish**

Plaintiff seeks to hold Defendant Rembish personally liable for the same behavior as arresting officers Jones and Reed. See Compl., Counts I-IV. Plaintiff alleges that after his collision, "[t]he car was quickly surrounded by officers from the MPD, including Curtis Reed, Curtis Jones and Stanley Rembish," who then proceeded to brutally attack him. Id. ¶¶ 15-16.

Defendants respond that Rembish was not present during the arrest when the alleged beating occurred. Defendants have proffered evidence that when Rembish, an evidence technician, arrived at the crime scene Plaintiff was sitting on the curb in handcuffs near the ambulance. Def.'s Mot., Ex. 7 (Deposition of Stanley Joseph Rembish) at 2. Rembish has testified that he came "within three

6

or four feet of [Plaintiff] for two seconds" to "see if he had any injuries that we needed to photograph at the scene," but he did not "talk to the man." Pl.'s Opp., Ex. 5 (Rembish Depo.) at 3. According to Jones, "it would have been impossible" for Rembish to have used force because he was not at the scene during the arrest. Def.'s Ex. 6 (Jones Depo.) at 2; see Def.'s Ex. 5 (Reed Depo.) at 2-3 (placing Rembish's arrival as "way after" the arrest). Reed confirms in his deposition that he and Jones were the only officers to have come into contact with Plaintiff before the arrest. Def.'s Ex. 5 at 2-3. Plaintiff disputes Defendants' evidence in his sworn declaration, stating that "Officer Rembish arrived on the scene and began beating me as well." Pl.'s Opp., Att.2 (Declaration of Harold Linares ¶ 4).

The Court finds that a genuine issue of material fact exists with respect to Rembish's participation in the alleged wrongdoing, and that such issue can only be resolved by a jury making credibility determinations. Therefore, the motion for summary judgment on the claims against Rembish set forth at Counts I, II, III and IV of the complaint is denied.

### C. Plaintiff's Medical Treatment Claim Against Officers Rembish, Jones, and Reed

Plaintiff alleges that Rembish, Jones and Reed violated the Fifth Amendment when they "deliberately disregarded [his] need for medical treatment and refused to accommodate [his] numerous requests for treatment." Compl. ¶ 36 (Count IV). Defendants contend that they offered Plaintiff medical care at the crime scene, even though Plaintiff did not appear to have a serious medical condition that required urgent care. Defendants have proffered evidence that within minutes of Plaintiff's arrest, Jones called an ambulance to the scene, that the ambulance arrived "within six minutes," Def.'s Mot., Ex. 6 (Deposition of Curtis Jones) at 3, and that emergency medical personnel at least spoke with Plaintiff. Def.'s Ex. 5 (Deposition of Curtis Reed) at 4-5; Ex. 13 (Deposition of Aubrey Mongal) at 2. See also Def.'s Ex. 10 (photos purportedly of Plaintiff and the

7

ambulance at the arrest scene).³  In addition, Defendants have proffered evidence that Plaintiff was seen by a doctor at about 2:30 the afternoon following his 2:40 a.m. arrest but refused treatment. Def.'s Mot., Ex.1 (Arrestee's Injury/Illness Report).  As to the extent of Plaintiff's injuries, Jones testified that an ambulance was called to the arrest scene to "treat [Plaintiff] initially . . . for . . . the laceration to his lip and the bruise over his eye. . . . "  Def.'s Ex. 5 at 3.  In addition, Dr. Joseph Bastian testified that when he saw Plaintiff on January 5, 2002 at the District of Columbia Jail, Plaintiff had a black eye and a swollen nose, but that a radiologist determined after reviewing x-rays that Plaintiff's nose was not broken.  Def.'s Ex. 11 (Deposition of Joseph Bastian, M.D.) at 12, 14, 17-18.  Dr. Bastian gave Plaintiff over-the-counter pain medication for what he determined to be "a minor injury."  Id. at 18.

In his declaration, Plaintiff states that despite his "repeated requests" to Reed, Jones and Rembish for medical treatment "they refused to provide any treatment," Linares Decl. ¶ 6, that he "did not receive any medical attention until January 5, 2002, more than 48 hours after the police beat me," id. ¶ 7, and that he "did not refuse medical treatment at any time while under the custody of the Metropolitan Police Department."  Id. ¶ 8.  In addition, Plaintiff declares that he "complained [to Dr. Bastian] of getting beaten and hit in the face with a blunt object," id. ¶ 12, and that "[a]s a result of the beating, I continue to suffer mentally and physically.  For example, I continue to have trouble breathing."  Id. ¶ 9.

Because the foregoing disputed facts present triable issues which must be decided by a jury on whether the arresting officers acted with deliberate indifference to a serious medical need, the

---

³ Plaintiff has not challenged Defendants' portrayal of the photographs, but states that "[i]f an ambulance was called, it was not called for me because I was not treated." Linares Decl. ¶ 11.

Court denies Defendants' motion for summary judgment on the medical treatment claim against Rembish, Jones and Reed (Count IV).

**D.  Plaintiff's Negligent Supervision Claims Against Ramsey, Farr, and Jones**

In Count V of the complaint, Plaintiff alleges that Defendant Ramsey, the then-Chief of Police, "failed to adequately oversee the training and supervision" of the arresting officers and their supervisors.  Compl. ¶ 40.  In Count VI of the complaint, Plaintiff alleges that Defendant Farr failed as a commanding officer to adequately supervise and train Jones and Reed and that Defendant Jones as a commanding officer failed to adequately supervise and train Defendant Reed.  Id. ¶¶ 43-44.  Plaintiff claims that Defendants' inadequacies as supervisors "directly and proximately" caused his injuries.  Id. ¶ 45.

As this Court determined earlier in denying part of Defendants' motion to dismiss, "[t]he District of Columbia recognizes the tort of negligent supervision" as subjecting to liability "[a] person conducting an activity through servants or other agents . . . for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity; or in permitting, or failing to prevent, negligent or other tortious conduct by persons . . . upon premises or with instrumentalities under his control."  Tarpeh-Doh v. United States, 28 F.3d 120, 123 (D.C. Cir. 1994) (quoting Restatement (Second) of Agency § 213 (1957)) (other citations omitted).  Thus, "supervisory officers [are] subject to suit, though not always ultimately liable on the merits for the particular transgressions involved."  Carter v. Carlson, 447 F.2d 358, 365, n.12 (D.C. Cir. 1971), rev'd on other grounds sub nom. District of Columbia v. Carter, 409 U.S. 418 (1973) (citing cases); see Marusa v. District of Columbia, 484 F.2d 828, 831 (D.C. Cir. 1973) (cause of action stated against the police chief and the District of Columbia for negligent hiring and supervision).  In Tarpeh-Doh,

the D.C. Circuit set out the following framework for such claims.

> The District of Columbia recognizes the tort of negligent supervision as formulated in the Second Restatement of Agency:
>
> 1. A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.
>
> Restatement (Second) of Agency § 213 (1957), *quoted in Murphy v. Army Distaff Found., Inc.,* 458 A.2d 61, 64 (D.C.1983); *see also International Distrib. Corp. v. American Dist. Tel. Co.,* 569 F.2d 136, 139 (D.C. Cir.1977) (applying District of Columbia law and citing § 213 as authority for tort of negligent supervision). Of course, as in any negligence action, a plaintiff seeking to establish negligent supervision "bears the burden of presenting evidence 'which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of.' " *Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979) (quoting *Kosberg v. Washington Hosp. Center, Inc.,* 394 F.2d 947, 949 (D.C. Cir. 1968)).

Tarpeh-Doe, 28 F.3d at 123-124.

Defendants contend that Plaintiff has not satisfied his burden by proffering expert evidence on the applicable standard of care. Plaintiff counters that the requirement of expert testimony " 'is not the law of the District of Columbia,' " Pl.'s Opp. at 6 (quoting Daskalea v. District of Columbia, 227 F.3d 433, 445 (D.C. Cir. 2000)), but his reliance on the quoted snippet is misleading. To prevail at trial on his negligent supervision claim, Plaintiff must prove that Defendants deviated from the proper standard of care with respect to the supervision and training of police officers on the use of

force. It is true, as Plaintiff argues, that under District of Columbia law, expert testimony is not required to prove "a deviation from the applicable standard of care . . . where the alleged negligent act is within the realm of common knowledge and every day experience." Daskalea, 227 F.3d at 445 (internal citations and quotation marks omitted). However, "expert testimony is required when the subject presented is so distinctly related to some . . . profession . . . or occupation as to be beyond the ken of the average layman." District of Columbia v. White, 442 A.2d 159, 164 (D.C. 1982) (citations and internal quotation marks omitted); accord Scott v. District of Columbia, 101 F.3d 748, 757 (D.C. Cir. 1996). In Daskalea, the Court found "a continuing series of evening stripteases, accompanied by blaring music and guard-on-inmate violence" to have been so "persistent, open and notorious" that a lay person could "reasonably conclude that the District had been negligent (at best) when it failed to notice, let alone stop" the behavior. Id., 227 F.3d at 445. The Court recognized, however, that the jury did not need to "rely only upon its common sense" given that an internal investigation had also found negligence among the ranks. Id.

Unlike the pervasive and obvious misbehavior in Daskalea, Plaintiff has not presented any evidence to indicate that the use of excessive force by MPD officers was the norm rather than the exception. He alleges that Chief Ramsey "permitted and tolerated a pattern and practice of unreasonable use of force" and "maintained a system of review of police conduct so untimely and cursory as to be ineffective. . . ." Compl. ¶¶ 21-22; see also id. ¶¶ 39-40 (Count V). Plaintiff then speculates that the alleged failure of supervision encouraged the officers' behavior because it "caused the Defendant police officers to believe that the excessive and unreasonable use of force would not be thoroughly, honestly, and properly investigated. . . ." Id. ¶ 23. Despite having engaged in substantial discovery, however, Plaintiff has not proffered any evidence about the actual process used

11

in reviewing police misconduct.  Nor has he proffered any evidence that contradicts the policy in place at the relevant time which counseled against such wrongdoing.  See Def.'s Ex. 14 (General Order on Use of Force).  Finally, Plaintiff has presented no expert evidence that Chief Ramsey negligently implemented an anti-excessive force policy which, Plaintiff seems to concede was, on its face, appropriate.

In the absence of any evidence that Ramsey, Farr and Jones as supervisors tolerated the unreasonable use of force in the face of obvious and widespread violations, Plaintiff must establish Defendants' negligence through expert testimony.  See Cotton v. District of Columbia, ___ F. Supp. 2d ___ (D.D.C., Mar. 31, 2008) ("Expert testimony generally is necessary on claims of negligent training and supervision of police officers.") (internal citation and quotation marks omitted); Edwards v. Okie Dokie, Inc., 473 F. Supp.2d 31, 45 (D.D.C. 2007) ("D.C. district and local courts have held that expert testimony is required to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel.") (citing cases).  Because Plaintiff's failure to proffer the testimony of an expert witness is "fatal to [his] negligence claim," Scott, 101 F.3d at 757, the Court grants Defendants' motion for summary judgment on the negligent supervision claims against Ramsey, Farr and Jones (Counts V and VI).  See Briggs v. Washington Metropolitan Area Transit Authority, 481 F.3d 839, 841 (D.C. Cir. 2007) ("[W]e hold that appellees are entitled to summary judgment because Briggs did not offer creditable evidence sufficient to establish a controlling standard of care.") (quoting Scott, 101 F.3d at 757); Allison v. Howard University, 209 F. Supp. 2d 55, 61 (D.D.C. 2002) (rejecting negligence claim where plaintiff "fail[ed] entirely to articulate the applicable standard of care or to state how the defendants might have deviated from that standard").

**IV.     CONCLUSION**

For the reasons stated above, Defendants' Motion for Partial Summary Judgment as to Counts V and VI of the Third Amended Complaint is **granted**, and their motion as to the claims against Defendant Stanley Rembish is **denied**. A separate Order accompanies this Memorandum Opinion.[4]

April 28, 2008

/s/
GLADYS KESSLER
U.S. District Judge

---

[4] In addition to Rembish, the case remains against Defendants Curtis Jones and Curtis Reed on Counts I-IV of the Third Amended Complaint.